IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISREAL LEONARD, ID # 882013, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:03-CV-2888-D |
| | ) | |
| DOUGLAS DRETKE, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for murder in Cause No. F99-00794-T. Respondent is Douglas Dretke, Director of TDCJ-CID.

### B.  Procedural and Factual History

This case involves the death of Cynthia Randall on Sunday, December 15, 1996, at the home (Apartment 241) she shared with petitioner, her boyfriend at the time of her death. On December

15, 1998, the State indicted petitioner for her murder.  TR[1] at 2 (indictment); Reporter's Record,

Vol. II at 3-4 [hereinafter cited as RR-volume # at page].[2]

At trial, fourteen witnesses testified for the State.  Tonya Williams, a friend of the decedent,

testified that the decedent took drugs the afternoon or early evening of Friday, December 13, 1996.

RR-IV at 123-28.  Another of the decedent's friends, Michelle Sisk, testified that the decedent

arrived at Sisk's home Saturday morning just before eight o'clock after being "out all night."  *Id.* at

128-29.  She testified that the decedent had been doing drugs before arriving at her home but was

not stumbling or falling down there.  *Id.* at 130-31.  She testified that the decedent drank two to six

beers throughout the day and left for home just before midnight Saturday, and that although the

decedent was afraid to go home, she took a cab home.  *Id.* at 131-33, 135-37.  Sisk testified that the

decedent was not injured, intoxicated, or drunk when she left for home.  *Id.* at 133-34, 138, 142.

Sisk's daughter, Ranita Warren, corroborated her mother's testimony.  *See id.* at 146-152.

Terrence Randall, the decedent's brother, testified that the decedent was not drunk,

intoxicated, stumbling around, or sick when he saw her around five o'clock Saturday afternoon or

---

[1]  "TR" refers to the state trial record in Cause No. F99-00794-T.

[2]  The Court uses roman numerals to reference the various volumes of the Reporter's Record.  The Court notes that petitioner questions in his state habeas application and in his first attachment to his federal petition how testimony from Frank Saucedo is now found in the fifth volume when it was previously found in the fourth volume.  *See* S.H. Tr. at 19 ["S.H. Tr." denotes the state habeas records attached to *Ex parte Leonard*, No. 53,901-03, slip op. (Tex. Crim. App. Apr. 2, 2003)].  Apparently, the sixth volume of the Reporter's Record was initially erroneously designated as volume five. *See* RR-VI at 1 (showing change to volume six with the initials of the official court reporter, Sharon Hazlewood).  Also, the first volume of the Reporter's Record provides a master index of the trial and punishment proceedings that contains a chronological index which erroneously lists Volumes II through VI as Volumes I through V.  *See* RR-I at 2-7.  This error appears to be caused by a failure to recognize that the first volume is the master index, and not the volume that records matters occurring at the pretrial hearing, which are found in Volume II.  To eliminate further confusion, the Court lists the seven volumes of the Reporter's Record and their contents:  Volume I is the Master Index; Volume II records the Pretrial Hearing of June 28, 1999; Volume III records proceedings of June 28, 1999, commencing with voir dire; Volume IV records the trial proceedings of June 29, 1999; Volume V records the trial proceedings of June 30, 1999, including some of the punishment phase; Volume VI records the remainder of the punishment phase, which took place on July 1, 1999, including sentencing; and Volume VII is the Exhibit Index and contains exhibits admitted into evidence.

when he saw her around midnight Saturday. *Id.* at 156, 158-59, 161-62. He also testified that the decedent did not want to go home. *Id.* at 160.

Neighbors of the decedent and petitioner testified about what they heard and observed after the decedent returned to her apartment early Sunday morning. *Id.* at 23-60. Ervin Johnson of Apartment 242 testified that sometime during the first hour of Sunday he heard an argument from Apartment 241 during which a male called someone a "bitch" and "ho" at the same time he heard five loud thumps against the wall between his bedroom and the bedroom in Apartment 241. *Id.* at 23-24, 29-33. Janice Clark of Apartment 240 testified that, shortly before one o'clock Sunday, she heard someone arrive at Apartment 241, and that about ten to fifteen minutes or so later, she heard three loud thumps from that apartment, which made her believe that a child was awake and running into the wall. *See id.* at 37-38, 42-43. Clark further testified that she heard no arguing. *Id.* at 43. Her boyfriend, Billy Williams, testified consistently with her. *See id.* at 55-60.

The decedent's mother, Shirley Randall, testified about events and observations from both Saturday and Sunday. *Id.* at 61-98. She described her daughter as a drug addict and petitioner as a controlling person. *Id.* at 61, 67. She testified that her daughter did not go home on Friday. *Id.* at 67-68. She further testified that from a telephone conversation with her daughter at approximately midnight on Saturday, she thought her daughter sounded tired but not drunk or intoxicated. *Id.* at 71-72. Randall also testified that within an hour or so, she was speaking to petitioner on the telephone when her daughter arrived home, but petitioner did not mention that her daughter was drunk, high, or sick. *Id.* at 76-78. She testified that he did not sound angry. *Id.* at 77. Randall testified that petitioner called her Sunday morning at or before eight o'clock asking for a ride to work; when she arrived at the apartment, petitioner told her that the decedent was asleep and was

3

so "out of it" that she had urinated all over herself. *Id.* at 78, 80-81. Randall testified that she proceeded to the bedroom where she found her daughter dead with "a laceration . . . on the head" and a "bruise around her neck," and that when she confronted petitioner, he did not believe she was dead. *Id.* at 82-85. She testified that, although petitioner told law enforcement personnel that her daughter was sick, stumbling, and vomiting before going to bed, she saw no evidence of vomiting and did not believe his story. *Id.* at 85-87. Randall testified that petitioner gave her no explanation for the laceration or the bruise. *Id.* at 89.

Law enforcement personnel testified regarding the investigation of Cynthia Randall's death. *Id.* at 99-122; 164-84. Officer Kevin Morris testified that, when he arrived at the scene, petitioner told him that the decedent arrived home around midnight "high on drugs" and that she stumbled and "fell a couple of times" before falling asleep on the bed. *Id.* at 105. He testified that he found evidence that the decedent had urinated in bed but no evidence of any vomit. *Id.* at 101, 106-07, 111. Morris testified that when the medical examiner arrived and turned the victim over, he saw "several abrasions and bruises on the victim's body", which caused him to believe that this was no mere drug overdose case. *Id.* at 108, 112. He testified that, other than a knocked over night stand, he saw no potential sign of struggle, "no indentations or holes in the wall", no blood other than on the victim and the bed. *Id.* at 116, 119-20. He testified that the apartment was carpeted. *Id.* at 111.

Officer Carney testified that petitioner had told him that the decedent came home intoxicated Sunday morning two or three hours after midnight, he put her in bed after she fell down "several times", and she was dead when he awoke later that morning. *Id.* at 167. Carney testified that based upon information that he received from the family that "she was intoxicated and she had

fallen before," he believed the decedent's injuries were from a fall. *Id.* at 171. He also testified that he found no evidence of vomit. *Id.* at 173.

Detective Linda Erwin testified that her investigation began in November 1998, and that she believed that the injuries to the decedent indicated "that a murder had occurred" rather than injuries sustained in a fall. *Id.* at 175-83.

Dr. Joanie McClain, a medical examiner, testified that an examination of the decedent revealed four discreet areas of blunt force trauma to the head and that based upon that examination, she determined the cause of death to be "blunt force injuries of the head." RR-V at 15-18. She testified that the decedent's injuries were not consistent with a single fall and were not the result of any single bump, fall, or collision. *Id.* at 18-20. McClain testified that a person could have beaten the decedent with his bare hands and caused the injuries and death. *Id.* at 21. She further testified that the "irregular marks . . . at the base of the neck" were consistent with someone slamming the head into a wall or floor. *Id.* at 21-23. McClain also testified that the injuries were not consistent with a fall because she found no defensive scrapes on the decedent's hands and no abrasions from the carpet, except on one knee. *Id.* at 23-24. She testified that the decedent would have been unable to go up stairs after sustaining her injuries. *Id.* at 33. In addition, McClain testified that toxicology tests revealed cocaine in the decedent's system and a small amount of alcohol (less than one beer). *Id.* at 28-29. Although she could not pinpoint when the cocaine entered the decedent's body, she testified that her death did not appear to be an overdose. *Id.* at 30-31. Over a hearsay objection by defense counsel, McClain testified that she had been told that petitioner had told "his current girlfriend that he had killed once" before. *Id.* at 34-35.

Gloria Beard Randall, the ex-sister-in-law and former wife of the decedent's brother Terrence, testified about a beating petitioner gave the decedent on the day before Thanksgiving that resulted in a black-eye. *Id.* at 52-56. She described petitioner as "controlling." *Id.* at 51. She also testified that she had spoken to the decedent an hour before midnight Saturday, and that the decedent did not sound drunk or intoxicated. *Id.* at 56-57. She further testified that she noticed scratch marks on petitioner's neck soon after the decedent's death, and that the decedent had two broken fingernails on her hand. *Id.* 58, 61.

Before the trial court permitted the ex-sister-in-law's testimony regarding the Thanksgiving extraneous offense, it conducted a hearing outside the presence of the jury. *See id.* at 47. After hearing brief argument from the parties, the court ruled the extraneous offense admissible. *Id.* It specifically found the probative value of the evidence outweighed the prejudicial effect. *Id.* In addition, the trial court gave a limiting instruction to the jury just after the State elicited the testimony regarding the extraneous offense. *See id.* at 65-66. It specifically instructed the jury that it could only use the evidence of such extraneous offense for purposes of proof of motive, intent, absence of mistake or accident, and state of mind. *Id.*

At the close of the State's case, defense counsel moved for a "directed verdict of not guilty" and the trial court denied the motion. *Id.* at 66. In his defense, petitioner thereafter re-called Detective Erwin, Officer Carney, the decedent's brother, and the neighbor Ervin Johnson. *See id.* at 67, 83, 96, 105. Detective Erwin provided additional testimony regarding her and Officer Carney's investigation. *See id.* at 67-83. Officer Carney defended his initial investigation and his decision not to arrest petitioner at that time. *See id.* at 83-95. He also testified that he could not determine "whether there was a struggle or whether the apartment was cluttered like that all the

6

time." *Id.* at 93.  He testified that he noticed no indentations in the wall that looked as though someone's head was slammed into it. *Id.*  The decedent's brother confirmed the extraneous offense that occurred the day before Thanksgiving. *Id.* at 96-97, 101.  Mr. Johnson confirmed his earlier testimony. *See id.* at 105-15.  After resting, defense counsel did not reassert a motion for acquittal. *See id.* at 115-17 (showing no such motion made after resting and commencement of closing statements).  During closing, petitioner argued that the decedent's injuries and death resulted from falls caused by extreme drug or alcohol intoxication. *See* RR-V at 128-29 (closing argument).

On June 30, 1999, a jury convicted petitioner of murder. *Id.* at 1, 136.  Prior to commencing the punishment phase of trial, the court conducted a hearing outside the presence of the jury regarding the admission of evidence of petitioner's prior convictions. *See id.* at 136-38.  In light of objections by defense counsel, the court ordered the State to redact from the documentary evidence all references to a prior attempted murder charge that had been reduced to misdemeanor assault. *Id.* at 137.

At punishment, the State presented evidence of petitioner's other convictions, as reflected in State's Exhibits 27-35, and verified through a fingerprint expert that petitioner was the same person convicted in each of the prior cases. *Id.* at 139-45.  The nine exhibits reflect convictions for misdemeanor assault in 1991 (two convictions), misdemeanor theft in 1991, felony taking and attempting to take a weapon from a police officer in 1993, misdemeanor theft in 1994 (three convictions), misdemeanor evading arrest in 1994, and misdemeanor assault in 1997. *Id.* at 144-45, *accord* State's Exs. 27-35 contained within RR-VII.  Felix Saucedo, a probation officer in Dallas, Texas, testified that within three months of beginning probation on December 22, 1993, petitioner began violating the terms of his probation and accumulated twenty to twenty-five probation

7

violations.  RR-V at 146, 148-50.  Saucedo further testified that the State sought to revoke his probation "for what at the time was an attempted murder reduced to a misdemeanor"; counsel objected to the testimony, and the trial court overruled the objection.  *Id.* at 154.  Officer Jerry Girdler testified about the attempted murder charge that had been reduced to misdemeanor assault.  *Id.* at 157-62.  Over a hearsay objection by defense counsel, which had been overruled, Girdler testified that the victim told him that petitioner had stated to her while he tried to suffocate her: "I have killed one, I will kill your ass too."  *Id.* at 159-60.  On cross-examination, the officer indicated that, although the victim later recanted her statement, he still believed it.  *Id.* at 161-62.

Before allowing the jury to deliberate on the issue of punishment, the Court held a hearing outside the jury's presence during which it conceded that it had erred in allowing Saucedo's testimony regarding the attempted murder charge; the Court then suggested an instruction to the jury that it could not use such testimony for "any purpose whatsoever in making a decision in this case."  RR-VI at 3.  Although defense counsel stated that he appreciated the offer, he declined it because he believed "the less the jury hears about it the better."  *Id.* at 4.  The defense called two character witnesses who both testified that petitioner was worthy of mercy.  *Id.* at 7-16.  After hearing the testimony, the jury assessed punishment at life imprisonment and the court sentenced him consistent with that assessment.  *Id.* at 28-29.

On July 1, 1999, the trial court entered judgment on the jury verdict and affirmatively stated that the jury found that petitioner "used or exhibited a deadly weapon during the commission of said offense to-wit:  with his hand, and a [sic] unknown object, and by causing the head of Cynthia Randall to strike a wall, and a floor."  TR at 38.  On June 27, 2001, the Fifth District Court of Appeals of Texas at Dallas affirmed the conviction.  *Leonard v. State*, No. 05-99-01202-CR, 2001

8

WL 717941, at *1 (Tex. App. – Dallas June 27, 2001, pet. ref'd).  On November 14, 2001, the Texas

Court of Criminal Appeals refused petitioner's petition for discretionary review.  (Pet. for Writ of

Habeas Corpus (Pet.) ¶ 9.)  On June 19, 2002, petitioner filed a state application for writ of habeas

corpus related to his murder conviction.[3]  S.H. Tr. at 2.  On April 2, 2003, the Texas Court of

Criminal Appeals denied petitioner's application without written order.  *Ex parte Leonard*, No.

53,901-03, slip op. at 1 (Tex. Crim. App. Apr. 2, 2003).

On November 24, 2003, petitioner filed the instant petition for federal habeas relief.  (*See*

Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners

file their federal pleadings when they place them in the prison mail system).  On February 3, 2004,

the Court received petitioner's brief in support of his petition.  (*See* Brief Supp. at 1.)  Respondent

thereafter filed an answer and provided the state-court records.  (Resp.'s Answer.)  Petitioner subse-

quently filed a traverse.  (Traverse.)

## C.  Substantive Claims

In his federal petition, petitioner claims that the State is holding him unlawfully because  the

trial court erred in admitting evidence regarding prior altercations with the decedent and allowing

testimony about the attempted murder charge that was reduced to a misdemeanor, and because his

trial attorney rendered ineffective assistance by not making timely proper objections and failing to

move for a mistrial.  (Pet. at 7; Brief Supp. at 2-3.)  In particular, petitioner asserts that his trial

attorney rendered ineffective assistance when he (1) failed to object to a comment on his failure to

---

[3] Petitioner also filed a state application for writ of habeas corpus and a state petition for writ of mandamus in a case unrelated to the murder conviction.  *See Ex parte Leonard*, No. 53,901-01, slip op. (Tex. Crim. App. Dec. 18, 2002) (denying leave to file writ of mandamus); *Ex parte Leonard*, No. 53,901-02, slip op. (Tex. Crim. App. Dec. 18, 2002) (dismissing state application for writ of habeas corpus in case unrelated to challenged murder conviction).

testify; (2) failed to object to testimony regarding the reduction of the attempted murder charge to a misdemeanor; (3) coerced him to sign a waiver related to jury notes regarding his prior criminal history; (4) failed to object to or review jury charge or request particular jury instructions; (5) failed to challenge the sufficiency of the evidence; (6) failed to request the State to choose between the two theories set forth in the indictment; (7) failed to request the State to reveal whether the case was based upon direct or circumstantial evidence; (8) failed to object to the reading of the indictment to the jury in its entirety; (9) failed to object that the wall, floor, and his hand are considered a deadly weapon in the indictment; (10) failed to object to jury charge regarding what should be considered a deadly weapon; (11) failed to file a motion for acquittal after the State rested; (12) failed to file a request to instruct the jury about "sudden passion"; and (13) failed to object and file a motion to challenge the affirmative finding of a deadly weapon. *Id.* Petitioner also claims that his appellate attorney failed to challenge the sufficiency of the evidence. *See* S.H. Tr. at 27.

Although petitioner purports to merely provide "previously unknown additional facts" in the fourth attachment (a two-page document) to the brief in support of his federal petition, (*see* Traverse at 3), it appears that he may be attempting to raise new claims of ineffective assistance that differ from those presented to the Texas Court of Criminal Appeals in petitioner's state application for writ of habeas corpus. More specifically, petitioner appears to also claim that his attorney (a) failed to re-assert an objection to testimony of Dr. McClain; (b) failed to request a curative instruction that the jury disregard the objectionable testimony of Dr. McClain; (c) failed to move for a mistrial after such testimony; (d) failed to cross-examine the victim's mother, thus exhibiting a lack of preparedness; (e) failed to object when the mother provided objectionable testimony; (f) called the

10

brother to testify without ascertaining the substance of his testimony and without consulting petitioner; and (g) failed to lodge proper objections against testimony from Saucedo and Girdler.

### D. Procedural Issues

Respondent contends that petitioner has not sufficiently exhausted his state remedies with respect to the new claims (a-g) raised in the fourth attachment to petitioner's federal brief.  (*See* Answer at 4-8.)  He does not seek dismissal for the failure to exhaust, but rather on the related ground of procedural bar.  (*Id.* at 5-7.)  Petitioner, on the other hand, contends that the Court should not find these claims procedurally barred.  (*See* Traverse at 1-14.)

## II.  PROCEDURAL BAR

Respondent asserts that petitioner has procedurally defaulted the claims of ineffective assistance of counsel raised for the first time in the fourth attachment to the petitioner's brief in support (claims a-g).  (*See* Answer at 4-8.)

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).  When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review.  *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).  Furthermore, when a claim has not been reviewed by the state's highest court, this Court may find such claim procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest

11

court of the state and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id.*

To present a claim to the highest state court means that the petitioner has fairly presented such claim to the correct court in a procedurally proper manner. *See Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). One does not "fairly present" the substance of a particular claim by raising a claim based upon a different legal theory. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). "It is not enough that all the facts necessary to support the . . . claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted).

To find claims procedurally barred from federal habeas review, the Court must find that petitioner procedurally defaulted such claims; the state court either relied upon such default or would do so if the claim were now presented to it; and petitioner has not overcome the procedural bar by showing cause for and prejudice from such default, or by demonstrating that application of bar will result in a fundamental miscarriage of justice.

A review of the claims petitioner raised in state court reveals that he did not raise the claims asserted in the fourth attachment to his brief in support. *See* Appellate Brief at 22-24 (identifying claims raised on direct appeal); PDR at 1-4 (identifying claims raised in PDR); S.H. Tr. at 14-33 (identifying state habeas claims raised against murder conviction). The failure to properly present these claims to the highest court in Texas constitutes a procedural default that could bar this Court from considering the claims on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004). Were this Court to require Petitioner to now present the defaulted claims to the Texas Court of Criminal

12

Appeals, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine, TEX. CODE CRIM. PRO. ANN. art. 11.07, § 4.[4]  That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (footnote omitted).  "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000).  When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law." *Id.*  Consequently, unless petitioner can overcome the procedural bar, the defaulted claims raised in the instant petition will not be further considered.

To overcome the procedural bar, a petitioner must demonstrate "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* at 524 (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)).  Throughout his traverse brief, petitioner asserts that ineffective assistance of counsel caused his procedural default, he was prejudiced thereby, and that, in any event, a miscarriage of justice would result from the Court's failure to consider the claims. (*See generally* Traverse.)  Petitioner also asserts that the State prohibits hybrid representation, and thus he could not raise his claims himself.  (*Id.* at 10.)

---

[4]  Texas also has an abuse of writ doctrine specifically applicable to capital cases.  *See* Tex. Code Crim. P. Ann. art. 11.071, § 5(a).  No material difference exists between the rules or their analysis. *Emery v. Johnson*, 139 F.3d 191, 195 n.3 (5th Cir. 1997).  The Court may thus freely cite to either capital or non-capital cases that address the abuse of writ doctrine.

Petitioner has shown no cause for failing to raise the claims to the Texas Court of Criminal Appeals. Because petitioner failed to present the claims of ineffective assistance of counsel in his *pro se* state writ, he cannot demonstrate cause for the default by asserting that his attorney should have presented the claims or by relying upon a State prohibition regarding hybrid representation. Neither a prohibition on hybrid representation nor alleged ineffective assistance of counsel provides cause for not presenting claims in a *pro se* state habeas application for writ of habeas corpus. Although petitioner could have presented the claims to the Texas Court of Criminal Appeals through his *pro se* state application for writ of habeas corpus, he presents no reason for his failure to raise them in that application other than a conclusory statement that the facts supporting such claims were previously unknown to him. The Court finds no adequate basis for the conclusory statement and no adequate reason for the failure to present the claims in his state writ.

Petitioner, furthermore, has not shown that consideration of the defaulted claims is necessary to prevent a miscarriage of justice. The miscarriage of justice exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Although petitioner asserts that he is actually innocent, he provides no facts to show that he did not commit the murder for which he was convicted. He instead relies upon a claim that no or insufficient evidence supports the conviction. Such claim, however, does not equate with a claim that he did not commit the crime for which he was convicted. *See Hernandez v. Cockrell*, No. 3:00-CV-2003-M, 2001 WL 1661696, at *4 (N.D. Tex. 2001) (findings and recommendation accepted by the District Court). He also asserts that DNA testing will "ultimately prove" his claim of innocence because such testing would reveal that his skin was not found under

14

the victim's fingernails. (*See* Traverse at 7, 13.) Even if it is true that DNA testing will show that skin under the victim's fingernails does not match petitioner's DNA, such showing does not exonerate petitioner from the murder. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on the claims raised in the fourth attachment to his federal brief in support (claims a-g), and the Court will not review such claims.

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits except to the extent it raises a legal-insufficiency-of-the-evidence claim. *See Ex parte Grigsby*, 137

S.W.3d 673, 674 (Tex. Crim. App. 2004) (holding that, although a denial generally constitutes an adjudication on the merits, a denial without written order indicates a procedural dismissal of claims of insufficiency of the evidence). The court of appeals specifically considered the merits of petitioner's two evidentiary errors when it affirmed his convictions. *Leonard v. State*, No. 05-99-01202-CR, 2001 WL 717941, at *1-3 (Tex. App. – Dallas June 27, 2001, pet. ref'd). In view of these adjudications on the merits, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply to petitioner's claims that are not procedurally barred from federal review.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

16

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's remaining claims.

## IV. TRIAL COURT ERROR

Petitioner alleges that the trial court erred in admitting evidence regarding his relationship with the victim and that the trial court erroneously allowed testimony that an attempted murder charge against him had been reduced to misdemeanor assault. (Pet. at 7.)

Evidentiary rulings made during a state trial are matters of state law that are not subject to re-examination by the federal courts. It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error is not harmless, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted). There must be "more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *See Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75

17

F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to an admissibility error, petitioner must show the error actually prejudiced him. *See Brecht*, 507 U.S. at 637.  The erroneous admission of prejudicial evidence "does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role" in the outcome of the proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

"A federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law" unless it is asserted that the state law itself violates the Constitution. *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  "State appellate courts are free to police their own evidentiary rules." *Id.* at 1224.  In habeas actions, furthermore, federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Jackson*, 194 F.3d at 656.  If an erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief on such error when the error "renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  A fundamentally unfair trial violates the Fourteenth Amendment right to due process. *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  A trial is deemed "unfair" when it has been "largely robbed of dignity due a rational process." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (citation omitted).

## A.  Evidence of Relationship with Victim

Petitioner contends that the court should not have allowed testimony from the ex-sister-in-law regarding the incident in which he gave the decedent a black eye the day before Thanksgiving in 1996.  (*See* Attachment 3 to Brief Supp. at 23 (partial copy of petitioner's brief on appeal).)

18

Consistent with the appellate decision on petitioner's claims raised on direct appeal, respondent approaches this claim as though petitioner also complains about the introduction of testimony from the ex-sister-in-law regarding the scratches on his neck and the decedent's broken fingernails.  (*See* Answer at 11-13); *Leonard v. State*, No. 05-99-01202-CR, 2001 WL 717941, at *1-3 (Tex. App. – Dallas June 27, 2001, pet. ref'd).   Although neither the petition nor its brief in support with attachments appear to support such approach, the Court considers both allegations.

Petitioner does not assert that any state law violates the Constitution.  Instead, he asserts that the evidentiary rulings prejudiced him.  However, he unsuccessfully challenged the alleged trial court errors on direct appeal.  *See Leonard v. State*, No. 05-99-01202-CR, 2001 WL 717941, at *1-2 (Tex. App. – Dallas June 27, 2001, pet. ref'd).   The appellate court found testimony regarding petitioner's relationship with the victim "properly admissible" under Texas law.  *Id.* at *2.  In view of that state ruling of admissibility, this Court will defer to the state-court determination of Texas law.  Finding the evidence properly admitted under Texas law, the Court is unable to find any trial court error related to the admission of testimony regarding prior acts of violence of petitioner against the decedent.  Under state law, the trial court properly admitted the evidence.  Because the trial court did not err in admitting the testimony, this claim entitles petitioner to no habeas relief.  In the absence of error by the trial court, an evidentiary ruling cannot deny a criminal defendant a constitutionally fair proceeding.

**B.**  **Testimony Concerning Reduction of Attempted Murder Charge**

Petitioner also specifically contends that the court should not have allowed testimony from Probation Officer Saucedo that petitioner had been charged with attempted murder and that the charge had been reduced to misdemeanor assault.   (*See* Attachment 3 to Brief Supp. at 25-27.)

19

Again, petitioner does not assert that any state law violates the Constitution, but instead asserts that the evidentiary ruling prejudiced him.  As with the preceding claim of trial court error, petitioner also unsuccessfully challenged this alleged error on direct appeal.  *See Leonard*, 2001 WL 717941, at *2-3.  With respect to the testimony regarding the reduction of the attempted murder charge, the appellate court assumed "without deciding" that the trial court erred in allowing such testimony from Probation Officer Saucedo, but concluded that "any error was harmless" because Officer Girdler later provided similar testimony without proper objection.  *Id.* at *3.

This Court will also assume without deciding that the trial court erred in allowing the testimony of the probation officer.  Like the state appellate court, this Court also finds the error harmless within the meaning of *Brecht*.  The testimony did not deny petitioner a constitutionally fair proceeding.  The evidentiary error did not render the trial or punishment proceeding fundamentally unfair.  As mentioned by the state appellate court, Officer Girdler provided similar testimony at punishment regarding the reduction of the attempted murder charge.  In addition, although not mentioned in the context of reducing an attempted murder charge to assault, Dr. McClain testified at trial about the same statement by petitioner that he had killed before.  The jury, furthermore, saw exhibits which showed that petitioner had previously committed three misdemeanor assaults and had been convicted for the felony offense of taking or attempting to take a weapon from a police officer.  In view of the other evidence before the jury, the Court finds that the complained of testimony from Saucedo did not have a substantial effect or influence in determining the sentence assessed by the jury.  The alleged prejudicial evidence did not play a crucial, critical, or highly significant role in the assessed sentence.  Because petitioner has not shown that the admissibility error actually prejudiced

him, he is entitled to no habeas relief on this claim.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his federal petition, petitioner claims that his trial attorney rendered ineffective assistance. (Pet. at 7.)  In his first attachment to his brief in support of his federal petition, he clarifies the specific allegations of ineffective assistance of trial counsel and includes a claim that his appellate attorney rendered ineffective assistance of counsel.  *See* S.H. Tr. at 14-33 (habeas record containing the attachment to the federal brief in support).

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial.  U.S. CONST., art. VI.  Criminal defendants, furthermore, have a constitutional right to effective assistance of counsel in their first appeal.  *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963).  To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Id.* at 696.  "A claim of ineffective assistance based on the failure to argue an issue on appeal is governed by the familiar two-part *Strickland* test."  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."

*Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  To show prejudice in the sentencing context, petitioner must demonstrate "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context).  To show prejudice, when an attorney has "failed to adequately brief an issue on direct appeal, [petitioner] must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue."  *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).  Petitioner "must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and unreliable result."  *Id.*  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice."  *Id.* at 693.  They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012

22

(5th Cir. 1992).  Conclusory allegations, furthermore, are insufficient to obtain habeas relief.  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A. Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial attorney rendered ineffective assistance when he (1) failed to object to a comment on his failure to testify; (2) failed to lodge a proper objection to testimony regarding the reduction of his previous attempted murder charge to a misdemeanor; (3) coerced him to sign a waiver related to jury notes regarding his prior criminal history; (4) failed to object to or review jury charge or request particular jury instructions; (5) failed to challenge the sufficiency of the evidence; (6) failed to request the State to choose between the two theories set forth in the indictment; (7) failed to request the State to reveal whether the case was based upon direct or circumstantial evidence; (8) failed to object to the reading of the indictment to the jury in its entirety; (9) failed to object that the wall, floor, and his hand are considered a deadly weapon in the indictment; (10) failed to object to jury charge regarding what should be considered a deadly weapon; (11) failed to file a motion for acquittal after the State rested; (12) failed to file a request to instruct the jury about "sudden passion"; and (13) failed to object and file a motion to challenge the affirmative finding of a deadly weapon.  S.H. Tr. at 14-33.

### 1. *Failure to Object to Comment on Failure to Testify*

Petitioner first alleges that his attorney rendered ineffective assistance when he failed to object to a closing statement by the prosecutor that referred to his failure to testify.  *Id.* at 14. Although he argues that even an indirect reference to the failure to testify may be reversible error, petitioner does not identify any specific prosecutorial statement that he alleges improperly referred

to his failure to testify.  *See id.* at 14-15.  The Court, nevertheless, notes the following statements

made while the prosecutor explained the burden of proof in petitioner's criminal action:

> And in the State of Texas, the burden of proof for any criminal case is beyond a reasonable doubt.  By no means is that the highest burden of proof that anyone will have in the in the State of Texas.  Does that mean that that is something that the State cannot prove?  We meet that burden of proof on a regular basis day-to-day, week-to-week in this courthouse, *regardless of whether or not they testify*, because I told you that is a right that the defendant has.  *Whether or not they choose to testify* it doesn't affect us one bit.  We still prove our cases beyond a reasonable doubt regardless of that testimony.

RR-V at 117-18 (emphasis added).  Because the italicized text could be considered an indirect refer-

ence to petitioner's failure to testify at trial, the Court considers whether counsel rendered ineffect-

ive assistance by failing to object to the statement.

A failure to object does not constitute deficient representation unless a sound basis exists for

objection.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (noting that a futile or "meritless

objection cannot be grounds for a finding of deficient performance").  Even with such a basis, how-

ever, an attorney may render effective assistance despite a failure to object when the failure is a

matter of trial strategy.  *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a fail-

ure to object may be "a matter of trial strategy as to which [the courts] will not second guess coun-

sel").  "A decision not to object to a closing argument is a matter of trial strategy."  *Drew v. Collins*,

964 F.2d 411, 423 (5th Cir. 1992).  On habeas review, the federal courts do not second guess an

attorney's decision through the distorting lens of hindsight, but rather the courts presume that

"counsel's conduct falls within the wide range of reasonable professional assistance . . . [and], under

the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland v.

Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

24

In this instance, petitioner has not overcome the presumption that the failure to object falls within the wide range of reasonable assistance. The alleged objectionable statement occurred early in the State's closing argument, and an objection would have brought greater attention to the statement. The failure to object is a matter of trial strategy that this Court does not second guess. The Court thus finds that the failure to object does not constitute deficient representation.

Petitioner, furthermore, has shown no reasonable probability that, but for the failure to object, the result of trial would have been different. The failure to object does not undermine confidence in the verdict. Consequently, petitioner has not carried his burden to affirmatively show that he was prejudiced by the failure to object to the potential indirect comment on his failure to testify.

For all of these reasons, the failure to object does not constitute ineffective assistance of counsel, and thus, entitles petitioner to no habeas relief.

### 2. *Failure to Object to Testimony Regarding Reduction of Attempted Murder Charge*

Petitioner alleges in his second claim that his attorney rendered ineffective assistance when he failed to lodge a proper objection to Probation Officer Saucedo's testimony regarding the reduction of the attempted murder charge to misdemeanor assault. S.H. Tr. at 15-18. He contends that such testimony "tainted" the guilt-innocence phase of his trial. *Id.* at 16.

In this instance, no one presented testimony prior to punishment that an attempted murder charge had been reduced to a misdemeanor. Petitioner is simply mistaken when he asserts that his trial was tainted by such testimony during the guilt-innocence phase. The trial court allowed the jury to hear the alleged objectionable testimony during punishment over objections by defense counsel. *See* RR-V at 154 (showing that counsel asserted objections under TEX. RULE EVID. 403 and

404(b)).[5]  The next day, the court conceded that it had erred in allowing the testimony, and asked

whether the defense desired a limiting instruction to address the testimony.  RR-VI at 3-4.  Despite

the trial court error, the Court finds no deficiency of counsel related to the testimony of Saucedo.

Counsel lodged objections that the trial court overruled.  Petitioner presents nothing to show that

his attorney could have kept the alleged objectionable testimony from the jury by making other

objections.  Furthermore, as shown by the discussion of trial error related to Saucedo's testimony,

petitioner has shown no prejudice from the testimony.  Petitioner has shown no reasonable probabil-

ity that, but for Saucedo's testimony, his sentence would have been significantly less harsh.  For all

of these reasons, this claim entitles petitioner to no habeas relief.

### 3. *Coerced Waiver*

In his third ground of error, petitioner alleges that his attorney rendered ineffective assistance

when his attorney coerced him to sign a waiver related to jury notes that requested review of his

criminal history.  S.H. Tr. at 18-22.  He contends that "the jury had sent several <u>notes</u> during delib-

eration at the guilt/innocence phase of [his] trial" and that his attorney caused him to sign a waiver,

which harmed him because his attorney failed to explain the waiver and no one informed him that

the prosecutor "presented" the waiver.  *Id.* at 18-19.  He further contends that he was simply told

"that the jury wanted to review his past record during deliberation at the guilt and innocence phase."

*Id.* at 19.  He also contends that the jury had reviewed a document concerning the attempted mur-

der charge that had been reduced to misdemeanor assault and requested to review the testimony of

Probation Officer Saucedo given during the guilt-innocence phase of trial.  *Id.*  In support of this

---

[5] Rule 403 permits courts to exclude otherwise relevant evidence "if its probative value is substantially outweighed by
the danger of unfair prejudice."  Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible
to prove the character of a person in order to show action in conformity therewith."

claim, petitioner attaches a signed "Agreement to Waive Reading of Court's Answer to Jury in Open Court." *See id.* at 52.

The above contentions and allegations of petitioner exhibit a lack of understanding of the trial proceedings. Contrary to petitioner's contentions, Saucedo provided no testimony until the punishment phase of trial. The jury heard no testimony regarding the reduction of the attempted murder charge until punishment. The signed waiver, furthermore, merely waives the reading of the court's answer to the jury and does not indicate that the jury was given petitioner's criminal history during the guilt-innocence phase of trial. *See id.* Furthermore, a review of the trial record reveals only one note from the jury, and within that note, the jury asks to review testimony of Shirley Randall, not petitioner's criminal history. *See* TR at 32. The trial record does not support the allegation that the jury asked to review petitioner's criminal history during the guilt-innocence phase of trial. Petitioner's conclusory contentions and allegations are unsupported by the trial record and provide no basis for federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (per curiam). "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Petitioner, furthermore, has failed to show how he was prejudiced by the alleged coerced waiver. The waiver merely concerns the reading of the answer to the jury – it does not concern the substance of such answer. For all of these reasons, this claim entitles petitioner to no habeas relief.

### 4. *Failures Related to Jury Charge*

Petitioner alleges that he was denied the effective assistance of counsel when his attorney failed to object to a fundamentally defective jury charge at both phases of his trial. S.H. Tr. at 22. Petitioner asserts deficiencies related to three specific aspects of the jury charge: (a) extraneous offenses, (b) sudden passion, and (c) definition of deadly weapon.

### a. Extraneous Offenses

Petitioner contends in his fourth ground of error that the jury charges given to the jury at both the guilt-innocence and punishment phases of trial were objectionable in the way they addressed the issue of extraneous offenses. *See* S.H. Tr. at 23. He specifically contends that the charge given at the guilt-innocence phase omits an appropriate instruction regarding extraneous offenses. *Id.* He also apparently contends that the charge given at the punishment phase erroneously contains such an instruction. *See id.* He alleges that his attorney failed to review the jury charges and lodge appropriate objections. *Id.*

At the conclusion of the evidence, the trial court presented a copy of the proposed guilt-innocence jury charge to both the government and the defense. RR-V at 116. The parties indicated that they had no objection or special request with respect to that charge. *Id.* With respect to extraneous offenses, the jury charge states:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, scheme, intent, plan[,] knowledge, absence of mistake or accident or state of mind of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

TR at 26.  Such instruction is consistent with the oral instruction given to the jury after the ex-sister-in-law's testimony regarding the incident between the decedent and petitioner the day before Thanksgiving.  *See* RR-V at 65-66.

The court also presented a copy of the punishment jury charge to both sides.  RR-VI at 17. Defense counsel stated that he had no objection other than an objection to including an instruction related to a "parole charge."  *Id.* at 18.  The State indicated that it did not request such an instruct-ion and had no objection to its omission.  *Id.*  The trial court stated:  "It's error, but it's harmless if you waive it.  I just don't like to get in the habit of doing things I know are errors.  They're going to say it's harmless because you asked for it.  So you're asking me to leave the parole charge out, [defense counsel]?"  *Id.*  Defense counsel answered in the affirmative.  *Id.*  With respect to extran-eous offenses, the punishment jury charge states:

> You are instructed that if there is testimony before you in this case regarding the defendant having committed other acts or participated in other transactions other than the offense alleged against him in the indictment in this case, that you cannot consider such other acts or transactions, if any, unless you first find and believe beyond a reasonable doubt that the defendant committed such acts or participated in such transactions, if any, but if you do not so believe, or if you have a reasonable doubt thereof, you will not consider such testimony for any purpose.

TR at 34.  As requested by defense counsel, the charge includes no specific instruction related to any parole charge.  *See id.* at 33-36.

To the extent petitioner alleges that his attorney failed to receive and review the jury charges, the record does not support such allegation.  The record clearly reflects that petitioner's attorney received and reviewed the jury charges.  The Court finds no deficiency of counsel related to reviewing the jury charges.

To the extent petitioner alleges that his attorney should have objected to the "omission" of a guilt-innocence instruction related to extraneous offenses, the Court finds no basis for such objection. The record clearly reflects that the guilt-innocence charge includes an instruction related to extraneous offenses because of testimony from the ex-sister-in-law related to a prior incident between petitioner and the victim. Because the instruction was not omitted as alleged by petitioner, there is no factual basis to support an objection based upon its omission. Consequently, the Court finds no deficiency of counsel for the failure of defense counsel to lodge an objection to its omission.[6]

To the extent petitioner alleges that his attorney should have objected to the inclusion of the extraneous offense instruction given at punishment, the Court finds no deficiency of counsel. Petitioner has presented no basis upon which counsel should have objected to the inclusion of such instruction at punishment. Petitioner has thus not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance. In addition, petitioner has not shown that the failure to object to the punishment jury charge creates a reasonable probability that his sentence would have been significantly less harsh. A claim of ineffective assistance of counsel entitles a federal petitioner to habeas relief only when the petitioner shows a deficiency of counsel and

---

[6] Petitioner does not appear to allege that his attorney should have objected to the inclusion of such instruction at the guilt-innocence phase. However, even if the Court were to construe the petition as making such allegation, petitioner does not allege why the included instruction is objectionable. He thus has not overcome the presumption that his attorney's performance falls within the wide range of reasonable assistance. Moreover, even were the Court to find some error in the inclusion of the extraneous offense instruction in the jury charge, the Court would find no prejudice to petitioner. Petitioner has not shown how the inclusion of such instruction creates a reasonable probability that the outcome of his trial would have differed. For all of these reasons, the Court finds no ineffective assistance of counsel related to the inclusion of an extraneous offense instruction at the guilt-innocence phase of trial.

prejudice resulting therefrom. Because petitioner has shown neither with respect to the jury charge given at punishment, he is entitled to no habeas relief on this claim.[7]

### b. Sudden Passion

Petitioner complains in his twelfth ground of error that his attorney failed to request a jury instruction on an alleged lesser-included offense of murder. S.H. Tr. at 24-25, 27. He contends that his attorney "should have raised the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." *Id.* at 25. He further contends that his attorney "knew that the evidence presented at trial supported an instruction for a lesser included offense." *Id.* at 27.

As aptly summarized by the Texas Court of Criminal Appeals, the legal landscape regarding voluntary manslaughter and sudden passion changed in September 1994:

> Before September 1, 1994, the Penal Code defined voluntary manslaughter as caus-ing the death of a person under circumstances that would constitute murder, except that the person acted "under the immediate influence of sudden passion arising from an adequate cause." So at that time, sudden passion was a guilt/innocence issue. This caused some difficulties because the State was forced to disprove sudden passion in any murder prosecution. The Legislature responded to those problems in 1993, deleting voluntary manslaughter from the Code and replacing it with a punishment issue in the murder statute. Now, if a defendant is convicted of murder, he may

---

[7] Petitioner does not appear to allege that his attorney should have objected to the omission of the instruction related to the "parole charge" discussed prior to its removal from the punishment jury charge. However, even if the Court were to construe the petition as making such allegation, petitioner does not allege why his attorney should have objected. Counsel clearly made a strategic choice to limit the jury's exposure to any further discussion about the reduction of petitioner's attempted murder charge. *See* RR-VI at 4 (stating that "the less the jury hears about it the better, judge"). Petitioner has not overcome the presumption that his attorney's performance falls within the wide range of reasonable assistance. The Court does not second guess strategic decisions of counsel. As alluded to by defense counsel, there are many valid reasons for not highlighting specific testimony to the jury. Moreover, even were the Court to find some error in the omission of an instruction related to the "parole charge", *i.e.*, the reduction of the aggravated murder charge, the Court would find no prejudice to petitioner. Petitioner has not shown how the omission of such instruction creates a reasonable probability that his sentence would have been significantly less harsh. For all of these reasons, the Court finds no ineffective assistance of counsel related to the omission of a limiting instruction related to reduction of petitioner's attempted murder charge.

> argue at punishment that he caused the death while under the immediate influence of sudden passion arising from an adequate cause. If he establishes that he did so by a preponderance of the evidence, the offense level is reduced from first degree to second degree and the ensuing punishment range reduced.

*Trevino v. State*, 100 S.W.3d 232, 236-37 (Tex. Crim. App. 2003). In view of the current legal landscape, the issue is not one of a guilt-innocence lesser included offense, but instead an issue related to punishment. Consequently, the Court finds no deficiency of counsel related to the failure of defense counsel to request an instruction for a lesser included offense based upon sudden passion. Such failure thus entitles petitioner to no habeas relief.

The Court also finds no deficiency of counsel related to the absence of an instruction at punishment related to sudden passion. There was no evidence presented at punishment to warrant an instruction on sudden passion. In light of the circumstances surrounding the decedent's death, petitioner was the only person who might have provided testimony related to sudden passion, and he voluntarily chose not to testify at punishment after discussing the matter with counsel. *See* RR-VI at 5-7 (showing testimony from petitioner outside the presence of the jury regarding his desire to testify at punishment).[8] Petitioner specifically indicated that his attorney was not "forcing" him to forego testifying. *Id.* at 6-7. Counsel left the decision to testify entirely within petitioner's control. *Id.* at 5-7. In light of the decision not to testify at punishment, counsel had no factual basis to argue sudden passion. Consequently, the failure to make such argument, to request an instruction on sudden passion, or object to the omission of such an instruction does not constitute deficient repre-

---

[8] Petitioner also testified outside the presence of the jury that he did not desire to testify during the guilt-innocence phase. *See* RR-V at 104-05.

32

sentation.[9]  As already mentioned, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *See Strickland v. Washington*, 466 U.S. 668, 691 (1984).  This claim entitles petitioner to no federal habeas relief.

### c.  Deadly Weapon Definition

In his tenth ground of error, petitioner also complains about the failure of his attorney to object to the jury charge as to the definition of deadly weapon.  S.H. Tr. at 29-30.

Under Texas law, "deadly weapon" is defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  TEX. PENAL CODE § 1.07(17) (2003).  The Court instructed the jury consistent with the latter definition.  *See* TR at 24.  Consequently, counsel had no basis to object to the definition of deadly weapon set forth in the jury charge.  In the absence of a sound basis for objection, attorneys do not provide deficient representation by failing to assert an objection.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

Because counsel had no basis to object to the definition of deadly weapon contained in the jury charge, petitioner is not entitled to habeas relief on a claim of ineffective assistance based upon the failure to assert such objection.

---

[9] Petitioner makes an allegation that his attorney failed to present a proper defense to warrant an instruction based upon sudden passion. S.H. Tr. at 27.  To the extent the Court should consider this as a separate claim, petitioner's choice not to testify removed any opportunity to present a defense based upon sudden passion in the context of this case.  Consequently, counsel was not deficient in failing to present such defense.

### 5. Failure to Challenge the Sufficiency of the Evidence

In his fifth ground, petitioner claims that his attorney rendered ineffective assistance when he failed to challenge the sufficiency of the evidence presented against him. *Id.* at 27. He also claims in his eleventh ground of error that his attorney failed to file a motion for acquittal at the conclusion of the government's case. *See id.* at 30. To aid the determination of these claims, the Court considers the legal principles associated with a challenge to the legal sufficiency of the evidence.

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). When reviewing an insufficiency-of-the-evidence claim against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463,

465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the *Jackson* "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260.

In this case, the State charged petitioner with murder. TR at 2. The State indicted petitioner for knowingly and intentionally causing death of Cynthia Randall by striking her "with his hand, a deadly weapon, and an unknown object, a deadly weapon, of which the exact description is unknown to the Grand Jury," and by causing her head "to strike a wall, a deadly weapon, a floor, a deadly weapon, and an unknown objection, a deadly weapon, of which the exact description is unknown to the Grand Jury." *Id.* The State also indicted petitioner for intending to cause serious bodily injury to the decedent and committing an act clearly dangerous to human life by the same actions. *Id.* The trial court, furthermore, instructed the jury consistent with the indictment and the Texas murder statute. *Id.* at 24-25; *see also* TEX. PENAL CODE ANN. § 19.02(b)(1) and (2) (Vernon 2003). In addition, under Texas law, body parts such as hands, as well as large flat surfaces like

35

floors and walls, can constitute a deadly weapon based upon their manner of use. *See Turner v. State,* 664 S.W.2d 86, 90 (Tex. Crim. App. 1983) (hands); *Stanul v. State,* 870 S.W.2d 329, 335 (Tex. App. – Austin 1994, pet. dismissed); *accord* TEX. PENAL CODE § 1.07(17)(b) (2003).

In this instance, the evidence presented at trial is sufficient to support petitioner's conviction for murder.  Although evidence showed petitioner's position that the decedent died from falls resulting from drug or alcohol intoxication, the State presented circumstantial evidence that the death resulted from someone striking her and pounding her head against the apartment wall or floor. The evidence reflected that the decedent could not have arrived at Apartment 241 with her injuries and that petitioner was the only other person at the apartment at the time of her death.  The evidence presented at trial is sufficient to establish all requisite elements of murder.[10]  From the evidence presented at trial, the jury could reasonably infer that petitioner acted knowingly or with the required intent to sustain his conviction.

The record does not support petitioner's contention that his attorney failed to challenge the sufficiency of the evidence at the close of the government's case.  The record clearly reflects that counsel moved for directed verdict or acquittal at the close of the government's case in chief.  *See* RR-V at 66.  Such motion constitutes a challenge to the sufficiency of the evidence and precludes habeas relief for the alleged failure to assert such challenge when the State rested.  It also precludes habeas relief for any alleged complete failure to assert such challenge.

To the extent petitioner alleges that his attorney failed to challenge the sufficiency of the evidence by not reasserting a motion for acquittal at the close of all evidence, the Court finds no

---

[10]  The evidence is also sufficient to support the trial court's deadly weapon finding, if that is the basis for petitioner's vague claim regarding challenging the sufficiency of the evidence.

deficiency of counsel. Attorneys are "not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Because sufficient evidence supports petitioner's murder conviction, counsel had no legitimate basis for moving for acquittal at the close of all evidence. Petitioner, furthermore, has not shown that he was prejudiced by the failure to move for acquittal after the defense rested. The trial court had already denied one such motion, and petitioner presents no basis to find a reasonable probability that a second such motion would have altered the outcome at trial.

For all of these reasons, petitioner is entitled to no federal habeas relief on his claim that his trial attorney failed to challenge the sufficiency of the evidence.

### 6. Failure to Request the State to Choose Between Alternate Theories

In his sixth ground of error, petitioner also alleges that his attorney rendered ineffective assistance when he failed to request the State to choose between two alternate theories of murder in the indictment. S.H. Tr. at 27. He also specifically voices an objection to the alternate theories. *Id.* at 31. However, under Texas law, "[a]n indictment may allege the several ways and means by which the proof suggests a homicide was committed." *Zanghetti v. State*, 618 S.W.2d 383, 386 (Tex. Crim. App. 1981). Counsel thus had no basis to request the State to choose between the alternate theories. Attorneys do not render deficient performance by failing to make an unwarranted request. This claim entitles petitioner to no habeas relief.

### 7. Failure to Determine Whether Case is Based Upon Circumstantial Evidence

Petitioner alleges in his seventh claim that his attorney rendered ineffective assistance when he failed to request the State to reveal whether the case against him was based on direct or circumstantial evidence. S.H. Tr. at 27-28. However, petitioner fails to show that such a request is proper

or permissible under State law.  The Court knows of no principle that makes such a request permissible under Texas law.  The State is free to prove its case with direct or circumstantial evidence.  In the absence of a showing that some principle of State law permits the omitted request, petitioner has not overcome the presumption that the failure to make the request falls within the wide range of reasonable assistance.  Petitioner, moreover, has not shown a reasonable probability that the failure to make such request altered the outcome of his trial.  Because petitioner has demonstrated neither prejudice nor a deficiency of counsel, this claim entitles him to no habeas relief.

### 8. *Failure to Object to Reading of the Indictment*

In his eighth claim, petitioner alleges that his attorney rendered ineffective assistance when he failed to object to the indictment being read to the jury in its entirety.  S.H. Tr. at 28.  Petitioner offers no reason why the indictment could not be read to the jury.  As already mentioned, furthermore, state law permits an indictment to allege the various ways and means by which the State may prove that a murder was committed.  Because petitioner has proffered no valid basis to object to the reading of the indictment to the jury, the Court finds no deficiency of counsel from the failure to object.  A futile or "meritless objection cannot be grounds for a finding of deficient performance."  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).  In addition, petitioner has not shown that a reasonable probability exists that the outcome of his trial would be different had the indictment not been read to the jury.  In the absence of a deficiency of counsel and resulting prejudice, this claim entitles petitioner to no habeas relief.

9. *Failure to Object to Indictment*

Petitioner also alleges in his ninth claim that his attorney rendered ineffective assistance when he failed to object that the wall, floor, and his hand are considered deadly weapons in the indictment. S.H. Tr. at 28-29.

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Federal courts, nevertheless, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the sufficiency issue. *Id.* at 598-99. In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner raised this failure-to-object issue in his state writ. *See* S.H. Tr. at 28-29. The Texas Court of Criminal Appeals denied that writ. *See Ex parte Leonard*, No. 53,901-03, slip op. at 1 (Tex. Crim. App. Apr. 2, 2003). Thus, the court implicitly found the indictment sufficient, and this Court will not review that implicit finding. *See Alexander*, 775 F.2d 598-99. Because the indictment was not defective under state law, counsel had no reason to object to it. Attorneys need not assert a futile objection to render effective representation. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). In the absence of a deficiency of counsel, this ineffective-assistance claim fails.

Petitioner, furthermore, has not shown that an objection to the indictment by his attorney would have created a reasonable probability that the outcome of his trial would have differed. As already mentioned, under Texas law, a person's hands, as well as large flat surfaces like floors and

walls, can constitute a deadly weapon based upon their manner of use. *See Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983) (hands); *Stanul v. State*, 870 S.W.2d 329, 335 (Tex. App. – Austin 1994, pet. dismissed); *accord* TEX. PENAL CODE § 1.07(17)(b) (2003). Petitioner has presented nothing to show a reasonable probability that the trial court would have sustained an objection to the indictment and thus, rendered it invalid. In the absence of prejudice from the failure to object, this claim fails.

### 10. *Failures Related to Affirmative Finding of a Deadly Weapon*

In his thirteenth claim, petitioner alleges that his attorney rendered ineffective assistance when he failed to object and file a motion to challenge the affirmative finding of a deadly weapon. S.H. Tr. at 31. Petitioner again fails to overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance. He does not set forth why such objection or motion was warranted under Texas law. A conclusory allegation of ineffective assistance of counsel does not entitle a petitioner to habeas relief. Petitioner, furthermore, has shown no reasonable probability that, had his attorney made such an objection or motion, the result of his trial would have differed or his sentence would have been significantly less harsh. He has not shown that the trial court would have sustained such an objection or granted such a motion. As already mentioned, furthermore, the evidence presented at trial is sufficient to support the finding of use of a deadly weapon. For all of these reasons, this claim entitles petitioner to no habeas relief.

### 11. *Summary*

Petitioner asserts several bases for finding ineffective assistance by his trial attorney. In each instance, however, the Court has found no deficiency of counsel, no prejudice to petitioner, or both. Petitioner has stated no ineffective assistance claim that entitles him to habeas relief.

In addition, by denying petitioner's state writ, the Texas Court of Criminal Appeals adjudicated petitioner's ineffective-assistance-of-counsel claims on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on these claims.

## B.  Ineffective Assistance of Appellate Counsel

Petitioner also claims in his first attachment that his appellate attorney failed to challenge the sufficiency of the evidence. S.H. Tr. at 27.

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

In this instance, petitioner raised his claims of ineffective assistance of appellate counsel in his state writ. *See* S.H. Tr. at 27. The Texas Court of Criminal Appeals denied that writ. *See Ex parte Leonard*, No. 53,901-03, slip op. at 1 (Tex. Crim. App. Apr. 2, 2003).

Because this Court has determined that a challenge to the legal sufficiency of the evidence lacks merit, appellate counsel did not render ineffective assistance by not presenting that issue to the court of appeals. Appellate counsel is not deficient in failing to present a meritless claim on direct appeal. Furthermore, to show prejudice from a failure to adequately brief an issue for appeal, petitioner must show a reasonable probability that the appeal would have had a different outcome had appellate counsel adequately addressed the issues. Petitioner has made no such showing of prejudice. The claim that his appellate attorney failed to raise claims on appeal thus provides no basis for federal habeas relief.

Further, by denying petitioner's state writ, the Texas Court of Criminal Appeals adjudicated this claim on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on this claim.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the

Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. §

2254.

**SIGNED this 22nd day of December, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE